IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>RYAN RIDDLE,<br>        Defendant. | **MEMORANDUM DECISION AND ORDER DENYING RYAN RIDDLE'S RENEWED MOTION FOR JUDGMENT OF AQUITTAL AND DENYING MOTION FOR A NEW TRIAL**<br><br>Case No. 2:11-cr-501-DN<br><br>Judge David Nuffer |

    At the close of the government's case on March 7, 2016, counsel for Defendant Scott Leavitt made and argued a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.[1] Defendant Ryan Riddle joined in the motion.[2] After all parties were heard on the motion, it was later denied.[3]

    On March 25, 2016, a jury found Mr. Riddle guilty of Counts 2 through 7 of the Indictment. These counts are violations of 18 U.S.C. § 1014, making false statements to a bank.[4]

---

[1] *See* Minute Entry, docket no. 1313, filed March 7, 2016.

[2] *Id*.

[3] Docket Text Order, docket no. 1310, filed March 7, 2016.

[4] Jury Verdict, docket no. 1399, filed March 25, 2016.

The merchant applications for the counts of conviction are listed below:

| Count | Entity | DBA | Nominal Owner | Application Date | Application Exhibit No. |
|---|---|---|---|---|---|
| 2 | GGL Rewards | Placing Ads Now | S.M. | 07/09/2009 | 103 |
| 3 | GGL Rewards | ClickMoneyShop.com | S.M. | 07/09/2009 | 102 |
| 5 | GGL Rewards | Advertising 4 Money | S.M. | 07/09/2009 | 101 |
| 4 | GGL Rewards | Ads 4 Profits | S.M. | 07/09/2009 | 100 |
| 6 | Business Loan Success | Alternative Funding | S.M. | 07/15/2009 | 44 |
| 7 | Business Loan Success | My Alternative Funds | S.M. | 08/18/2009 | 45 |

Mr. Riddle now renews the motion for judgment of acquittal[5] and also moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.[6] The government filed a consolidated response to both motions,[7] and Mr. Riddle filed a reply to the Rule 29 motion.[8] Having carefully considered all the filings, the motions are DENIED for the reasons discussed below.

## RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

Mr. Riddle lists ten points in support of his Rule 29 Motion and "asserts that the evidence presented at trial was insufficient to sustain his conviction on" counts 2 through 7 of the Indictment with violations of 18 U.S.C. § 1014, False Statements to a Bank.[9] While the motion does not cite trial testimony, evidence, or case law to support his argument, the reply does include case law citations.

---

[5] Defendant Riddle's Renewed Rule 29 Motion (Rule 29 Motion), docket no. 1442, filed April 8, 2016.

[6] Defendant Ryan Riddle's Motion for New Trial (Motion for New Trial), docket no. 1443, filed April 8, 2016.

[7] United States Response to Defendant Ryan Riddles Motion for Acquittal Pursuant to Rule 29 and Motion for a New Trial Pursuant to Rule 33 (Response), docket no. 1476, filed May 6, 2016.

[8] Defendant Riddle's Reply to Government's Response to Defendant Riddle's Rule 29 Motion (Reply), docket no. 1493, filed May 23, 2016.

[9] Rule 29 Motion at 2.

## Standard of Review

"The key parts of [a] sufficiency-of-the-evidence standard of review are (1) whether a reasonable jury could find guilt (2) beyond a reasonable doubt."[10] Evidence is sufficient to support a conviction if "a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom."[11] A reviewing court may not weigh conflicting evidence, consider credibility of witnesses, "or second-guess the fact-finding decision of the jury."[12] Sufficiency of the evidence is evaluated "by considering the collective inferences to be drawn from the evidence as a whole."[13]

## False Statement to a Bank and Aiding and Abetting

The Third Superseding Indictment[14] included the charging language for aiding and abetting in each court. Thus, when the jury convicted Mr. Riddle of counts 2-7 of the Superseding Indictment,[15] he was convicted of violations of 18 U.S.C. § 1014, False Statement to a Bank and 18 U.S.C. § 2, Aiding and Abetting[16] in that offense. "The law in this area is clear: it is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory."[17] "To aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself

---

[10] *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013).

[11] *United States v. Irving*, 665 F.3d 1184, 1194 (10th Cir. 2011) (internal quotations and citations omitted).

[12] *Id.*; *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013).

[13] *Irving*, 665 F.3d at 1194.

[14] Third Superseding Indictment, docket no. 584, filed August 5, 2015.

[15] Jury Verdict, docket no. 1399, filed March 25, 2016.

[16] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

[17] *United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004) (internal quotations and citations omitted).

with the venture, that he participate in it as in something that he wishes to bring about, and that he seek by his action to make it succeed."[18]

## Substantial Evidence Supports the Conviction

**Mr. Riddle was General Manager at iWorks'**

Mr. Riddle was the general manager at iWorks and part of upper management.[19] He became the general manager after working for a year and a half as the customer service manager.[20] Mr. Riddle trained and had direct supervision over Loyd Johnston and the merchant accounts department Mr. Johnston supervised.[21] The merchant accounts department implemented management's plan to open up more corporations to deal with iWorks high chargebacks.[22] The merchant accounts department created the information to open the shell corporations' merchant accounts in other people's names.[23] When Tracy Kramm was unhappy about how merchant accounts were set up for iWorks and complained to Loyd Johnston, corporate counsel Phillip Gubler, and others, Mr. Riddle fired her.[24]

Mr. Riddle's management position and direct supervision of the iWorks' merchant accounts department is a fact the jury might have considered in finding that he knew about the false information submitted to the bank on the merchant account applications.

---

[18] *Rufai*, 732 F.3d at 1190 (internal quotations and citations omitted).

[19] Kramm Tr. (February 16, 2016) 7:17-20, exhibit 9 to Response, docket no. 1476-9; Marker Tr. (February 17, 2016) 24:20-22; 172:13-14, exhibit 12 to Response, docket no. 1476-12.

[20] Riddle Tr. (March 14, 2016) 5651:12-5652:3, docket no. 1505, filed June 2, 2016.

[21] Johnston Tr. (Feb. 24, 2016) 6:23-8:11, attached as exhibit 11 to Response, docket no. 1476-11.

[22] Kramm Tr. 15:9-13; Marker, Tr. 23:20-24:.15

[23] Kramm Tr. 16:2-16; Marker, Tr. 26: 9-25.

[24] Kramm Tr. 53:19-54:6; 59:13-17.

**Mr. Riddle's Emails**

Numerous emails Mr. Riddle wrote and received show his role in providing false information to the bank. In early 2009, iWorks' increasing chargebacks became more problematic as its merchant accounts were closed and iWorks and Defendant Jeremy Johnson were placed on the Terminated Merchant File (TMF) and Member Alert to Control High Risk (MATCH) lists.[25] The email exhibits demonstrate that Mr. Riddle was copied on the emails notifying iWorks management of the chargeback problems.[26] Mr. Riddle wrote emails, and was copied on others, where he, Mr. Johnston, and Mr. Johnson discussed how to continue processing credit card sales as the iWorks merchant accounts were closed.[27]

Of particular note is the email from Loyd Johnston to Mr. Riddle on April 28, 2009 with the subject line "Processing under New Names."[28] In this email, Mr. Johnston explains directly to Mr. Riddle his preliminary information about setting up processing under new corporations, and states,

> Hey Ryan,
>
> My preliminary information is as follows: (#1 and 2 from Shane Fisher - #3 from Debra at HSBC)
>
> 1. Whomever we set these up under needs a credit score of 640 - 660 minimum (wasn't sure of the actual #)
>
> 2. There will be no financials on a new corporation so we will do a cross corporate guarantee
>
>   a. This will only work if the acquiring bank doesn't recognize iWorks (this is only an issue if they recognize iWorks and then want to look into Jeremy and then see the TMF .. a long string that isn't likely)

---

[25] Exhibits 474, 698, 700, 701, 703, 709.

[26] *Id.*

[27] Exhibits 705, 711, 716, 722, 726, 727, 737.

[28] Exhibit 705.

b. They seldom review the cross corporate guarantor

3. The match list only recognizes the principal in the corp, their SSN, and corporate address and phone number

As I get more information, I will pass it on ...[29]

Just two days later, Mr. Riddle confirms this information with Mr. Johnson, indicating again the plan to set up new accounts in names other than iWorks or Mr. Johnson and seeking some agreement on "a list of individuals that meet the criteria so that we can get this wrapped out quickly."[30]

On June 10, 2009, Mr. Riddle wrote a four page email to Mr. Johnson, copying Mr. Johnston, Mr. Scott Leavitt, and Mr. Bryce Payne in which he outlines "the proposed processing plan moving forward for Iworks [sic]."[31] This email provided specific directions to monitor processing and make sure "that nothing slips through the cracks" to "[give] us the best opportunity to process long term, make the most money, and keep risks to a minimum."[32]

The first level in the new plan was a new set of merchant accounts, "set up in iWorks name with Jeremy as the guarantor and corp president. We want this account to be obvious to Visa so they can see what we are processing."[33]

But Mr. Riddle also directed that the plan include a network of corporations, each with multiple merchant accounts, in names of nominees *other than* Jeremy Johnson, using corporations established in neighboring states:

> Each of these accounts will have their own corporation and each of these corporations will have two MID's to support that coprs program. The 5 corporations are being set up in names *other* than Jeremy's (We will be using

---

[29] *Id.*

[30] Exhibit 711.

[31] Exhibit 722 at 1.

[32] *Id*.

[33] *Id*. at 2.

> these three people.. Scott Muir, Andy Johnson, and Lacy Holm – 2 corps for Andy, 2 corps for Scott, and 1 corp for Lacy) we have 2 of these corps in progress as CA companies and the others will be set up in Nevada. We will be setting up additional corporations to be available for additional accounts/programs as they come up for Iworks Core processing needs. These "additional" corps will be set up under any of the three names previously mentioned unless Jeremy provides any new names.[34]

On June 24, 2009, Mr. Johnson responded to Mr. Riddle and said that he approved of his plan, but wanted some additions:

> I am ok with this but I still want back up merchant accounts (even if we just use them a tiny bit to keep them open) and I want many different corps so all processing is broken out in many places and I want the ability to put shit processing in one of those corps not tied to us at all knowing full well it will blow up in a few months. But I am 100% with you on your plan but I want this stuff too even if we never use it.[35]

These email exchanges establish that Mr. Riddle had a direct connection to the illegal conduct alleged in counts 2-7: that Mr. Riddle knew and directed that the nominee owner in the charged counts was Scott Muir; and that Mr. Riddle was aware of and authorized the false information in the Muir applications. The jury could reasonably conclude that Mr. Riddle was directing and participating in providing false information to the bank to create merchant accounts under new names not associated with iWorks or Jeremy Johnson.

## MOTION FOR A NEW TRIAL

Mr. Riddle's motion for a new trial contained only two paragraphs, without citations to the record or legal authority.[36] The motion is completely void of any substantive argument. The government asks that the motion be stricken because it does not meet the standards set out by

---

[34] *Id*. (emphasis, capitalization, and spelling in original).

[35] Exhibit 726.

[36] *See* Motion for New Trial at 1-2.

local rule regarding memoranda and proper citations,[37] and complains that "[t]he vagueness of defendant's motion makes it impossible for the government to address any specific ruling by the court without guessing."[38] Neither will the court be left to guess "the specific grounds for the motion" without "relevant facts, support authority, and argument."[39] Further, it appears that Mr. Riddle has abandoned his motion for a new trial as he did not file a reply to the motion, and only replied to the motion for acquittal.

## ORDER

IT IS HEREBY ORDERED that Defendant Riddle's Rule 29 Motion[40] and Motion for a New Trial[41] are DENIED.

Signed July 28, 2016.

BY THE COURT

_____
District Judge David Nuffer

---

[37] *See* DUCivR 7-1(a)(1)(A) & (B) ("The motion and any supporting memorandum must be contained in one document, except as otherwise allowed by this rule. The document must include the following: (A) An initial separate section stating succinctly the precise relief sought and the specific grounds for the motion; and (B) One or more additional sections including a recitation of relevant facts, supporting authority, and argument.").

[38] Response at 37.

[39] DUCivR 7-1(a)(1)(A) & (B).

[40] Docket no. 1442.

[41] Docket no. 1443.